[Civ. No. 56594. Second Dist., Div. Two. Mar. 26, 1980.]

ARTHUR A. STERNOFF et al.,
Plaintiffs and Appellants, v.
STATE BOARD OF EQUALIZATION,
Defendant and Respondent.

[Civ. No. 57526. Second Dist., Div. Two. Mar. 26, 1980.]

LYON MOVING & STORAGE COMPANY et al.,
Plaintiffs and Respondents, v.
STATE BOARD OF EQUALIZATION,
Defendant and Appellant.

COUNSEL

David A. Leveton for Plaintiffs and Appellants.

George Deukmejian and Evelle J. Younger, Attorneys General, Phillip C. Griffin and Richard E. Nielsen, Deputy Attorneys General, for Defendant and Appellant and Defendant and Respondent.

Hill, Farrer & Burrill and Robert P. Hess for Plaintiffs and Respondents.

OPINION

COMPTON, J.—This consolidated appeal arises out of two separately tried actions for refund of taxes paid under protest after the State Board of Equalization (Board) determined that plaintiffs were liable for the payment of use tax (Rev. & Tax. Code, § 6201) as a result of their purchase of certain raw materials.

Each of the two actions in the court below was in turn a consolidated action involving several plaintiffs, all of whom are engaged in a similar type of business, to wit, specialized packaging and preparing of merchandise for shipment. Both actions involved identical facts and issues.

For convenience we will refer to the actions below according to the name of the first captioned plaintiff in each case. Further, where appropriate, we will use the collective "plaintiffs" to refer to all plaintiffs in both actions.

In one case, Sternoff et al. v. Board (No. C 200968) the trial court rendered judgment for defendant Board. In the other case, Lyon Moving & Storage et al. v. Board (No. C 205685) judgment was in favor of plaintiffs. In each action the unsuccessful parties have appealed.

The undisputed facts[1] upon which both cases were decided are in summary as follows.

Plaintiffs perform custom packing including the construction, from raw material, of containers around goods which require special preparation prior to shipment. Plaintiffs maintain inventories of lumber, nails, strapping material, and other types of container material, which become components of the container. This container material was purchased without payment of sales tax because plaintiffs issued resale certificates to their various suppliers.

Plaintiffs were not the sellers of any of the goods that were packaged and plaintiffs did not perform any of the subsequent shipment of goods. The packing and preparation was generally performed by plaintiffs at their various business locations. Thereafter, the contained goods would be delivered to a carrier for shipment pursuant to directions from plaintiffs' customers. Items packaged for shipping included delicate instruments, machinery and computers, which were principally shipped in interstate or foreign commerce. The containers and packages were made for customers on an individual or job basis to hold specific goods. There was no understanding that the containers or packages would be returned to plaintiffs by plaintiffs' customers for reuse.

---

[1]In Lyon et al. v. Board, the case was tried solely on stipulated facts. In Sternoff v. Board, the case was tried on a stipulation of facts and some additional testimonial and documentary evidence.

Plaintiffs billed their customers a lump sum amount for packing and containing and did not make a "separate charge" for the container material. Although each transaction was based on an "express" contract agreement with the customer, there was no express provision for the passage of title to the container material in plaintiffs' billings, invoices, or other contract writings. Most of the purchase orders received by plaintiffs were verbal.

The Legislature has imposed a sales tax in California on the *retail* sale of tangible personal property. (Rev. & Tax. Code, § 6001 et seq.) The combined effect of the sales tax and its adjunct, the use tax, is to impose the tax upon the ultimate retail purchaser or consumer of such property.

The Board is charged with the duty of enforcing these taxes and has the authority to adopt regulations to implement the performance of that duty. (Rev. & Tax. Code, § 7051.) Due to the complexity of modern-day commerce, the regulations are numerous and deal with a multitude of activities, transactions and forms of business.

The instant case is yet another of the frequently occurring controversies concerning the application of the sales tax and its counterpart the use tax to "service type" businesses that provide their customers with types of tangible property in conjunction with the "service."

■ An individual or business entity providing purely a service to its customer is a consumer of the tangible property used in connection therewith and must pay sales tax when acquiring such property. The converse is true if such individual or entity is in fact in the business of selling the property to the customer.

The issue of determining whether a particular business activity constitutes a "service" or a "sale" of tangible property was addressed in *Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, at page 96 [130 Cal.Rptr. 321, 550 P.2d 593], as follows: "Essentially the crucial point of inquiry is whether the true object of the transaction is the finished article or the performance of labor."

This principle is embodied in California Administrative Code, title 18, section 1501,[2] which regulation articulates the "true object" test as follows: "is the real object sought by the buyer the service per se or the property produced by the service?"

---

[2]For convenience sake, all section numbers used refer to title 18 of the California Administrative Code unless otherwise indicated.

Section 1630 of the California Administrative Code, applies to "Packers, Loaders and Shippers." The thrust of that regulation is to declare that those types of businesses are primarily providing a service and are consumers of the tangible packing material which they use in providing such service. Thus the sales to such businesses of raw materials are taxable.

By contrast, section 1525 declares that sales tax does not apply to sales of raw materials to a manufacturer of goods for resale.

The conflicting contentions of the parties here may be simply stated as follows:

For its part, the Board takes the position that plaintiffs are not "selling" the containers to the customers but instead are providing a service of which the containers are an integral part. The Board relies on section 1630 and argues that plaintiffs are consumers of the material used in constructing the container. Thus the purchase of the material is taxable.

Although all plaintiffs concede that section 1630 is a reasonable regulation as applied to "Packers, Loaders and Shippers," plaintiffs in Lyon et al. v. Board, presents somewhat different contentions than do the plaintiffs in Sternoff et al. v. Board.

In the Lyon et al. matter plaintiffs concede that they are "packers" as that term is used in section 1630 but contend that the regulation should be interpreted according to the realities and practices of the industry which contemplate a sale of the container to the customer.

Plaintiffs in the Sternoff et al. matter maintain that they are manufacturers and retailers of the specialized containers. As such, their acquisition from suppliers of the raw materials is not subject to the sales or use tax. They argue that section 1630 is inapplicable to them and they point to section 1525.

We conclude that in spite of the Sternoff plaintiffs' bald statement that they are manufacturers, all plaintiffs are "packers" as that term is used in section 1630 and this controversy must be resolved within the context of that regulation.[3]

---

[3]Since it is agreed that plaintiffs are neither "shippers" nor "loaders," we will hereafter refer only to "packers."

Section 1630 recognizes and provides for the situation in which packers sell containers to their customers in a transaction separate and apart from the providing of the packing service.

Four requirements are established by the regulation which, if satisfied, will permit a packer to qualify as a seller of the container and thus escape the imposition of sales tax on its acquisition of the containers or of raw materials used to construct the containers.

These conditions are (1) an express sales agreement with the customer, (2) a passing of title to the container material prior to "use" by the packer, (3) a separate billing for container material, and (4) the absence of any agreement that the container be returned to the packer for reuse.

This regulation represents the Board's attempt to establish objective criteria for determining the "true object of the contract" as between "packers" and their customers.

■ A regulation will not be invalidated unless it can be characterized as arbitrary, capricious or patently unreasonable. (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, [106 Cal.Rptr. 867].) ■ All plaintiffs concede that section 1630 is, on its face, a reasonable and proper method of determining whether "packers" are consumers of or retail sellers of container material used in a particular type of operation.

Plaintiffs' attack on the tax levies here is directed at the Board's interpretation of section 1630 in its application to the plaintiffs' method of doing business.

■ "'The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law [citations], and while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts.'" (*Culligan Water Conditioning* v. *State Bd. of Equalization, supra*, 17 Cal.3d 86, at 93.)

■ In Lyon et al. v. Board, the trial court found that plaintiffs' agreement with their customers constituted a "purchase order" which resulted in plaintiffs "earmarking" material for the customers' purpose

and that title passed to the containers prior to the use of the completed container by plaintiffs. The court further found that although Plaintiffs admittedly did not comply with the requirement of a separate billing, plaintiffs' customers were exempt from sales tax and it was unreasonable to require performance of the useless task of making a separate billing.

In Sternoff et al. v. Board, the trial court found that the building of a container amounted to "packing" rather than manufacturing. From that finding flowed the additional finding that the express agreement between plaintiffs and their customers did *not* pass title to the containers prior to their use of them by the plaintiffs and this fact coupled with plaintiffs' failure to make a separate charge for the container led to the conclusion that plaintiffs were the consumers of the raw material.

Even though the trial court in the *Lyon* case purported to find substantial compliance with the regulation as interpreted by that court, the essential difference between the decisions of the two courts below is that one viewed the act of constructing a specialized container as the process of "packing" and the other viewed it as manufacturing an item on special order.

In our opinion the resolution of this dispute requires answering two questions in sequence. The first is—by the very nature of plaintiffs' business, can it be said that they are manufacturers and thus outside the ambit of section 1630? If the answer to that question were in the affirmative, the inquiry would be ended.

If the answer to that question is in the negative then the second question is—was there compliance with the regulation?

We have examined plaintiffs' exhibits which consist of pictures of sample types of the containers they fabricate.[4] We cannot say, simply on the basis of appearance, that as a matter of law the plaintiffs' business falls into one category or the other. The answer to the first question then is in the negative.

Thus we turn to the issue of whether plaintiffs complied with the regulation. It is agreed that there was no understanding that the containers be returned for reuse. That requirement of the regulation was met.

---

[4]Copies of those pictures are appended hereto as Appendix A.

The stipulation of facts states that in each instance plaintiffs had an "express agreement" with their customer. The terms of that agreement are nowhere further delineated. We can only infer that such agreements were contracts for a specific price to prepare an article for shipment according to certain specifications and requirements.

The resolution of this matter would not be advanced one iota by requiring that particular terminology be employed in order to satisfy the regulation. The regulation does not require a *written* contract and apparently industry practice is to use verbal agreements. We can assume that according to industry practice the agreements are viewed as contracts for sales of the completed containers.

As we view it, the critical requirements of the regulation, insofar as this dispute is concerned, are the passage of title to the container or material prior to use by plaintiffs and a separate billing which distinguishes between the cost of the container and any incidental "packing" service that is provided.

We interpret the regulation as requiring that title be passed to either the container or the material from which it is constructed prior to its use by plaintiffs in the packing process. The packing process is the placing and securing of the article in the container. We assume that as in any packing operation there is a certain amount of labor and material involved in positioning and securing the article in order to prevent movement and damage inside the container.

Hence if plaintiffs were to manufacture specialized containers and then place or "pack" the item in the container, it would be possible to effect a completed sale of the container prior to its "use" in the packing process. Plaintiffs then, in performing the packing operation, would be using the customer's container.

On the other hand if plaintiffs did not pass title to the container at that earlier time but merely supplied the container as a part of the packing service, then clearly there would be no sale of the container to the customer and the container would be "used" by the plaintiffs in providing a service.

The difficulty with the plaintiffs' operation is that in constructing a container around an item, the construction of the container and the packing service will progress contemporaneously and terminate simulta-

neously. Assuming that title to the container passes to the customer at the point of completion, it is clear that the plaintiffs have made prior "use" of the completed container in the same fashion as if they had first completed the container and then placed the article inside.

Plaintiffs are in effect "using" the container as they build it. Said another way, the container material is being consumed as the packing process proceeds, much the same as if they wrapped the article in paper or plastic.

Plaintiffs contend that it is unreasonable for the Board to interpret the regulation as requiring them to pass title to the container material in its unassembled state. We cannot agree. This contention is necessarily premised on their claim that they are selling completed containers. As we have pointed out the very nature of plaintiffs' operation makes it such that unless title to the unassembled material passes prior to commencement of construction, plaintiffs are "using" their own material in the packing process and not material belonging to their customers. This is the basis upon which the regulation distinguishes between "service" and "sale."

The distinction between the two methods of operation, i.e., completion of containers before packing and plaintiffs' method, is a reasonable basis upon which to rest constitutionally valid classifications with differing tax consequences. (Cf. *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization, supra*, 30 Cal.App.3d 1009.)

It is undisputed that plaintiffs made no separate charge for container material. Plaintiffs contend that since their customers were in interstate and foreign commerce, and thus exempt from sales tax, a separate billing is a meaningless requirement. The trial court in Lyon et al. v. Board, agreed.

This contention misses the point and is again premised on plaintiffs' assertion that they are manufacturing and selling containers.

The purpose of the separate billing requirement is not to facilitate the imposition of the sales tax. It is to provide objective evidence of a sale of the container. Beyond that, it permits a comparison of the charge made for the container with that made for "packing" service. The comparison would provide additional objective evidence of the "true object" of the transaction.

In summary the issue is simply that plaintiffs claim that, although they are packers, they also manufacture and sell made-to-order containers and that their operation substantially satisfies the objective of the regulation.

The Board contends that plaintiffs do not, and in fact, because of the nature of their business, *cannot* satisfy the regulation. The Board's position is simply that plaintiffs are engaged in providing a service.

We thus conclude that we are, in reality, being asked to decide the ultimate question of whether plaintiffs' business is in fact a service or that of manufacturing and selling at retail.

The resolution of such questions has been delegated to the Board by the Legislature. The role of the courts is to see that the Board has not acted arbitrarily and unreasonably. In our opinion, although the question could be answered either way, the more reasonable view is that the true object of the contract between plaintiffs and their customers is the service of "packing" the item in order to protect it during shipment. The container, although large and well constructed, is nothing more than an expendable "wrapper" which is not reuseable by the customer.

The Board's regulation and its interpretation thereof is reasonable. Plaintiffs have not met the conditions required for effecting a *retail* sale of the container. Plaintiffs have advanced other incidental contentions which do not merit discussion.

In case No. C 200968—Sternoff et al. v. Board, the judgment is affirmed. In case No. C 205685, Lyon et al. v. Board, the judgment is reversed and the matter is remanded to the trial court with instructions to enter judgment for defendant State Board of Equalization.

Fleming, Acting P. J., and Beach, J., concurred.

APPENDIX A